UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL WINKFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 3750 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CITY OF CHICAGO, M. VALERIO, and I. GAWLOWSKI, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This suit under 42 U.S.C. § 1983 and Illinois law arises from Plaintiff Michael Winkfield's arrest by Chicago police officers on May 16, 2010. Winkfield's original complaint, which named only the City of Chicago as a defendant, was dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(6). 2013 WL 1809920 (N.D. Ill. Apr. 29, 2013). Winkfield then filed an amended complaint against the City of Chicago and Chicago police officers M. Valerio and I. Gawlowski, which purports to state claims for false arrest, deprivation of property, and excessive force. Doc. 31. Defendants moved to dismiss under Rule 12(b)(6), Doc. 33, and the court appointed counsel to Winkfield to assist with his opposition to the motion and, if the case survived dismissal, with discovery and trial, Doc. 39. Winkfield's opposition brief concedes that his claims against the City should be dismissed with prejudice, Doc. 41 at 1, so only the claims against Valerio and Gawlowski need be discussed. For the reasons that follow, Defendants' motion is granted, and this case is dismissed with prejudice.

In considering Defendants' motion, the court assumes the truth of the amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [amended]

1

complaint, documents that are critical to the [amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Winkfield's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The facts are set forth as favorably to Winkfield as permitted by the amended complaint and the other materials that must be considered on a Rule 12(b)(6) motion. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Winkfield's false arrest claim, which arises under the Fourth Amendment, alleges that he was arrested without probable cause. The amended complaint acknowledges that the officers arrested Winkfield for battery after a woman named Angel Taylor told the officers that Winkfield had hit her son. Doc. 31 at 5. Winkfield's brief likewise recognizes that "his arrest was pursuant to a citizen's complaint." Doc. 41 at 3. Winkfield alleges, however, that Taylor lied to the officers in that it was she who attacked him, and also that his neighbors tried to explain this to the officers but that the officers ignored them. Doc. 31 at 4-7. Without passing judgment on whether Taylor lied to the officers, Winkfield's Fourth Amendment claim fails.

Governing precedent holds that "[p]olice are entitled to base an arrest on a citizen complaint … without investigating the truthfulness of the complaint, unless … they have reason to believe it's fishy." *Guzell v. Hiller*, 223 F.3d 518, 519-20 (7th Cir. 2000); *see also Harney v. City of Chicago*, 702 F.3d 916, 923 (7th Cir. 2012); *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007); *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003); *Woods v. City of Chicago*, 234 F.3d 979, 997 (7th Cir. 2000); *Spiegel v. Cortese*, 196 F.3d 717, 724-76 (7th Cir. 1999); *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439-40 (7th Cir. 1986); *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 200 (7th Cir. 1985). In *Rodgers*, for example, the

Seventh Circuit held that complaints to the defendant officer (Pagano) that the plaintiff (Rodgers) defaced Lincoln Towing Service's building established sufficient probable cause for Pagano to arrest Rodgers:

> We stated in *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984), that "[i]f policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable for a violation of the Constitution merely because it later turns out that the complaint was unfounded." No facts suggest that Pagano acted in anything other than good faith. Pagano was confronted by two Lincoln Towing employees who steadfastly maintained they had seen Rodgers throw the paint on the building, and by Rodgers, who maintained his innocence. We cannot fault Pagano for believing [the two Lincoln Towing employees] over Rodgers, even though it turned out that [the employees] may have been lying. Apart from the conclusion that Pagano "knew" [the employees] were lying, Rodgers has not alleged a single fact that would indicate Pagano thought Rodgers was innocent.

*Rodgers*, 771 F.2d at 200-01. Winkfield attempts to distinguish *Rodgers* on the ground that he "has alleged that independent witnesses, readily available to the officers, supported his innocence: 'My neighbors tried to explain to the police [what] happened, but the police rush to judgment made the arrest anyhow.'" Doc. 41 at 3-4. The distinction fails because the officers in *Rodgers*, like the officers here, were presented with conflicting accounts of whether the arrestee had violated the law.

Moreover, the amended complaint provides no basis to believe that Gawlowski and Valerio acted in "anything other than good faith," *Rodgers*, 771 F.2d at 200, in crediting Taylor's account over that of Winkfield and his neighbors. As the Seventh Circuit has explained:

> The idea behind *Gramenos* [*v. Jewel Cos.*, *supra*,] and similar decisions is that police often encounter competing and inconsistent stories. One person makes an accusation; another denies it; police on the scene must act yet lack the tools to determine immediately where the truth lies. The Constitution permits them to initiate the criminal process and leave the sifting of competing claims and inferences to detectives, prosecutors, judges, and juries in the criminal prosecution. If states think that this gives accused persons insufficient protection, they are free to enact statutes either staying the

3

> officers' hand or providing recompense to those exonerated in the criminal process.
>
> The sort of inconsistencies to which [the plaintiff] points are normal. Eyewitnesses remember things differently. Police don't always follow correct procedure (here, defendants concede, they should have completed the charge form before the complaining witnesses signed). If these were sufficient to permit second-guessing and damages, then the job of policing would be very risky financially as well as physically. Police would respond by disbelieving witnesses (or not acting on allegations), lest they end up paying damages, and the public would suffer as law enforcement declined. Often the victims themselves live in the shadows and do not fancy a trip to court, which may expose aspects of their lives they prefer to keep hidden; arresting on their accusations would be especially risky to the police; yet everyone is entitled to protection from crime, and that protection would erode if the arrested person could collect from the police every time a civil jury concludes that it would have handled the incident differently.

*Askew v. City of Chicago*, 440 F.3d 894, 896-97 (7th Cir. 2006). Accordingly, even viewing the facts in the light most favorable to Winkfield and drawing all inferences in his favor, his Fourth Amendment claim is a non-starter. *See Spiegel*, 196 F.3d at 724-25 ("Many putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established. Consequently the law does not require that a police officer conduct an incredibly detailed investigation at the probable cause stage.") (internal quotation marks omitted). Contrary to Winkfield's submission, Doc. 41 at 3-4, this conclusion may be reached on a Rule 12(b)(6) motion. *See Williamson v. Curran*, 714 F.3d 432, 441-44 (7th Cir. 2013) (affirming the district court's Rule 12(b)(6) dismissal of the plaintiff's false arrest claim on the ground that the arresting officers had probable cause); *Cady v. S. Suburban Coll.*, 152 F. App'x 531, 534 (7th Cir. 2005) (same).

Winkfield's property damage claim arises from his allegation that Taylor or some other person stole items from his apartment after his door was left unlocked upon his arrest: "I asked the police let me lock my door to my apartment. His words were shut your ass up and get into the car. After being locked up in jail for about 18 hrs, I come home the next afternoon my door

i[s] still open. I went inside most of my va[lua]bles are gone, stolen, because of the false arrest a neglect from not letting me lock my door." Doc. 31 at 5-6. Winkfield has no due process claim arising from the alleged theft of his property. Settled precedent holds that so long as the State makes available a meaningful post-deprivation remedy, there is no due process violation even where a government employee intentionally deprives the plaintiff of property. *See Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984); *Gates v. City of Chicago*, 623 F.3d 389, 409-410 (7th Cir. 2010); *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534-35 (7th Cir. 2008); *Higgason v. Morton*, 171 F. App'x 509, 512 (7th Cir. 2006); *Snyder v. Nolen*, 380 F.3d 279, 298 (7th Cir. 2004); *Gable v. City of Chicago*, 296 F.3d 531, 539-40 (7th Cir. 2002).

Winkfield does not dispute that Illinois provides an adequate tort remedy for property deprivations of the sort alleged to have occurred here, and indeed does not appear to challenge the notion that he has no due process claim. Doc. 41 at 4-5. Winkfield instead argues that "when property is damaged in the course of an arrest or execution of a search warrant[,] § 1983 may provide relief as such claims are based upon the unreasonable search and seizure provisions of the Fourth Amendment." *Ibid*. In support, Winkfield cites *Heft v. Moore*, 351 F.3d 278 (7th Cir. 2003), and *United States v. Ramirez*, 523 U.S. 65 (1998), both of which hold that *an officer's* unnecessary destruction of property *during* a search may violate the Fourth Amendment. *See Ramirez*, 523 U.S. at 71 ("Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression."); *Heft*, 351 F.3d at 282 (same). Here, by contrast, Winkfield alleges not that the officers stole or damaged his property during his

5

arrest, but that the officers' refusal to let Winkfield lock his door after the arrest allowed Taylor or unknown persons to steal his property.

That allegation is not actionable in a § 1983 suit. In *Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976) (en banc), the plaintiff (Bonner), a state prisoner, alleged that two prison guards left his prison cell door open after they had completed a security search when he was away, resulting in an unknown person stealing his property (a trial transcript). *Id*. at 566-67. The Seventh Circuit rejected Bonner's § 1983 claim, holding that "that the negligence of the guards which caused the loss of Bonner's transcript was not a State deprivation of property without due process of law under the Fourteenth Amendment *nor action 'under color of state law' under Section 1983*." *Id*. at 567 (emphasis added). The court reasoned as follows:

> Here there was no state action depriving Bonner of property under the Fourteenth Amendment because any state action ended when the guards left the cell after the security search. The loss of the transcript did not occur until after state action had terminated. Similarly, the taking of the transcript was not under color of state law because it was neither encouraged nor condoned by state agents. Any causation between the negligence of the prison guards in leaving the cell door open and Bonner's transcript loss was insufficient to satisfy Section 1983 because it was not alleged that the guards' actions were either intentional or in reckless disregard of Bonner's constitutional rights.

*Ibid*. As in *Bonner*, Winkfield does not allege that the officers' actions concerning his door were either intentional or in reckless disregard of his constitutional rights; there is nothing in the amended complaint or Winkfield's opposition brief suggesting that the officers intended that Winkfield's belongings would be stolen or that they were reckless in not realizing that a theft would occur. Accordingly, the theft of Winkfield's property by Taylor or some unknown person is not under color of state law because it occurred after the officers left the premises and because the officers "neither encouraged nor condoned" the theft. *Ibid*. It follows that Winkfield's

6

property loss claim, whether stated under the Due Process Clause or the Fourth Amendment, is not actionable under § 1983.

Winkfield's excessive force claim alleges only that "[t]here was some degree of excessive force used." Doc. 31 at 5. This barebones recital of an excessive force claim is insufficient under Rule 8(a). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 557 (2007)) (citations omitted). Winkfield's opposition brief "concede[s] … that [he] is unable to make good faith allegations that the individual police officers engaged in specific acts of excessive force or that Plaintiff suffered specific injury as a result of the arrest." Doc. 42 at 5. Absent those allegations, the excessive force claim offers merely "labels and conclusions," *Twombly*, 550 U.S. at 555, and therefore is not viable. *See Barr v. Gee*, 437 F. App'x 865, 877-78 (11th Cir. 2011) (affirming the dismissal of an excessive force claim where the plaintiff made only the "conclusory assertion that the force was 'excessive'" and "did not describe the 'beating' or otherwise allege facts permitting a plausible inference that the force [the police officers] used was unreasonable").

For these reasons, Defendants' motion to dismiss is granted. The dismissal is with prejudice because Winkfield has had two opportunities to plead his claims and because his opposition brief, implicitly conceding that the facts alleged by the amended complaint are the best he has to offer, does not request an opportunity to replead. *See James Cape & Sons Co. v.*

*PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend). Winkfield's state law claims are dismissed without prejudice for the reasons set forth in the opinion dismissing the original complaint. 2013 WL 1809920, at *2.

October 22, 2013                                             _____
                                                             United States District Judge